IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2020

**STATE OF TENNESSEE v. MCKINNLEY MCGEE**

**Appeal from the Circuit Court for Anderson County**
**No. B8C00123      Donald Ray Elledge, Judge**

_____

**No. E2020-00015-CCA-R3-CD**

_____

Defendant-Appellant, McKinnley McGee, was indicted by an Anderson County grand jury of attempted second degree murder in violation of Tennessee Code Annotated section 39-13-210 and 39-12-101, a Class B felony, and two counts of aggravated assault in violation of Tennessee Code Annotated section 39-13-102, a Class C felony. Following a jury trial, the Defendant was convicted as charged. The trial court sentenced the Defendant as a Range II, Multiple Offender to an effective sentence of twenty-years' imprisonment. The sole issue presented for our review is whether the evidence was sufficient to support the Defendant's conviction for attempted second degree murder. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed;**
**Remanded for Entry of Corrected Judgments**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ALAN E. GLENN, JJ., joined.

Tracey Vought Williams, Petros, Tennessee, for the Defendant-Appellant, McKinnley McGee.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Dave S. Clark, District Attorney General; and Anthony J. Craighead, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Machel Avery, the victim, and the Defendant, McKinnley McGee, had been in an "[o]ff and on" relationship for two years. During the twenty-four hours prior to the incident, the victim and the Defendant had been smoking crack cocaine and drinking at

another person's home. On the morning of January 12, 2019, the victim and the Defendant stopped at the victim's apartment so she could use the restroom. The victim testified that she asked the Defendant to wait for her outside, but he proceeded to follow her into the apartment. At 6:00 to 6:30 that morning, the Defendant gave the victim his debit card and asked her to walk to a nearby ATM to withdraw money from his checking account. The victim attempted to make the withdrawal, but the ATM stated the account funds were insufficient.

When the victim returned to the apartment and showed the Defendant the ATM receipt indicating there was no money in the account, the Defendant "got upset" and told her he wanted his money. The victim got "a little" scared and realized the Defendant thought she was withholding money from him. The Defendant took out a switchblade knife, began walking toward the victim, and repeated that he wanted his money. The victim stepped backwards as the Defendant pointed the knife at her. She testified that she tripped and fell on her back and the Defendant "went down and stuck [her]" on her left side under her rib cage. The Defendant left the apartment, and the victim laid on the floor until she was sure he was gone.

The victim walked to the apartment next door, where her cousin lived, and pounded on the door to get help. When no one answered, she returned to her apartment, locked the door, and called 911. She was bleeding heavily, panicking, and having trouble breathing. She recalled not knowing if she was going to live or die. She told the 911 operator she had been stabbed by the Defendant, and the police quickly responded to the scene.

Christopher Wallace, an Oak Ridge City Police patrol officer, arrived at the victim's apartment around 7:00 that morning. Another officer who responded to the scene, Matthew Johnston, testified that the victim was "having trouble breathing" and was in "obvious [] respiratory distress." Wallace noticed blood on the victim's clothing and in "various locations throughout the apartment." The victim told Wallace the Defendant stabbed her and showed him the inch-long wound under her rib cage. She stated the Defendant stabbed her after he accused her of "withholding money from him." The victim told Wallace she and the Defendant had previously broken up, the Defendant "called and stated he had some money to party the night before and, in an effort to rekindle the relationship, she agreed to go with him to party." Wallace knew the victim and the Defendant in a personal capacity and had been to the victim's apartment before. He noted that "it looked like some type of disturbance had occurred inside [the] apartment" and said the victim's apartment was typically "well [-] kept and very orderly." Medical personnel arrived quickly and transported the victim to UT Medical Center.

Dr. Roy Frank Roberts, a general and trauma surgeon at UT Medical Center, treated the victim at the hospital. Dr. Roberts testified that the victim had two stab wounds, one

on her back behind her shoulder blade and the other on her front left side underneath her rib cage. The stab wound to the victim's back caused the most severe injuries; it penetrated the lining of her left lung, causing it to partially collapse. Without medical intervention, the victim's left lung would have completely collapsed which would have eventually led to the collapse of her right lung as well. He classified the victim's injuries as "severe" and "grave" and said they would have led to death without treatment. The victim was hospitalized for six days.

The responding officers searched for the Defendant and quickly located him a block from the apartment. The switch blade knife was never found despite a search of Avery's apartment, the Defendant's person, and the area surrounding where he was found. There was no blood on the Defendant's clothing.

The victim filed an order of protection in which she gave a statement of events. In the statement, the victim originally wrote that the instant offense occurred on January 22, 2019, but later corrected the date to January 12, 2019. On cross-examination, the victim stated she "was confused" because her birthday was on January 22. In her statement, the victim said the Defendant did not directly follow her into the apartment but entered after she was already in the bathroom. She admitted she had been battling a cocaine addiction for the past seven years and used the drug "off and on" throughout that period. She denied being upset with the Defendant prior to the incident and stated she did not know the Defendant was planning on "leaving the area" and moving away.

After deliberation, the jury convicted the Defendant of attempted second-degree murder and two counts of aggravated assault. The trial court imposed a twenty-year sentence for attempted second degree murder, merged each count of aggravated assault, and imposed a ten-year concurrent term of imprisonment for each count of aggravated assault, for an effective sentence of twenty-years' imprisonment. The trial court conducted a hearing on the Defendant's motion for new trial, which was denied. The Defendant filed a timely notice of appeal, and his case is now properly before this court for our review.

## ANALYSIS

The Defendant argues the State failed to prove he acted in a manner that was intended and reasonably certain to cause the victim's death. In response, the State contends that the evidence presented was sufficient to support the jury's conviction for attempted second degree murder. We agree with the State.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279

S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)).

Attempted second degree murder requires the State to prove that a defendant acted with the intent to knowingly kill another and took a substantial step toward doing so. Second degree murder is a result-of-conduct offense because the statute "'focuses purely on the result and punishes an actor who knowingly causes another's death.'" State v. Brown, 311 S.W.3d 422, 431-32 (Tenn. 2010) (quoting State v. Ducker, 27 S.W.3d 889, 896 (Tenn. 2000)). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." See also Tenn. Code Ann. § 39-11-302(b) (1989). A defendant's mental state is a factual question for the jury to resolve. Brown, 311 S.W.3d at 432 (citing State v. Inlow, 52 S.W.3d 101, 104-05 (Tenn. Crim. App. 2000)). The Tennessee Supreme Court has explained that circumstantial evidence is often the only means of proving mental state: "[W]hile a defendant's mental state is rarely subject to proof by direct evidence, it is within the authority of the jury to infer the defendant's intent, and, therefore, whether the

- 4 -

defendant acted 'knowingly,' from surrounding facts and circumstances." Brown, 311 S.W.3d at 432 (citations and quotations omitted).

Viewed in the light most favorable to the State, the evidence supported the Defendant's conviction for attempted second degree murder. After the victim was unable to withdraw funds from the Defendant's bank account, the Defendant demanded his money and approached the victim with a switchblade knife. Backing away from the Defendant's knife, the victim tripped and fell onto her back. The Defendant then stabbed the victim twice, once in the front of her body and once in her back. The Defendant contends the State presented "no proof of a deliberate move to stab the victim" and argues "one could make a reasonable inference that when [the victim] fell, [he] went with her [and] the fall caused him to 'stick' her with his knife." However, the victim was stabbed twice, including once in her back. To the extent the Defendant argues that he stabbed the victim by accident, the proof belies this claim because the Defendant left the victim to die in a pool of blood without rendering any aid to her. Moreover, at trial, the Defendant argued that the victim was not credible in her account of the facts and that someone else had stabbed her. Accordingly, based on the above evidence, a jury could have inferred that the Defendant acted with the requisite intent to commit a knowing killing and that the Defendant's conduct in stabbing the victim constituted a substantial step toward that end. The evidence was sufficient to support the Defendant's conviction for attempted second degree murder, and he is not entitled to relief.

## CONCLUSION

We detect certain errors in the judgment forms. At sentencing, the trial court noted that each count of aggravated assault was to be merged with each other as well as with the attempted second-degree murder. The judgments for the aggravated assaults, however, only reflect merger with one another but not with the attempted second-degree murder. Accordingly, we remand for entry of corrected judgment forms. In all other respects, the judgments of the trial court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE

- 5 -